STATE OF NORTH CAROLINA v. STEVEN MARK FINNEY

No. COA02-608

(Filed 15 April 2003)

## 1. Evidence— hearsay—unavailable witness—admissibility under Rule 804(b)(5)

The trial court did not err in a first-degree rape case by allowing a detective to read the victim wife's statement to the jury under N.C.G.S. § 8C-1, Rule 804(b)(5), because: (1) although the victim appeared at trial pursuant to a subpoena, she refused to answer any questions before the jury; (2) sufficient written notice was given to the defense by the State as to the victim's unavailability in light of the fact that the State did not learn that the victim would not testify until the first day of trial; (3) the statement possessed equivalent circumstantial guarantees of trustworthiness; (4) the statement was offered as evidence of a material fact including a description of the assailant as well as the details of the offense; (5) the hearsay was more probative than any other evidence produced by the State when the victim refused to testify at trial; (6) the general purposes of the Rules of Evidence and the interests of justice were best served by allowing the statement into evidence; (7) there was no violation of defendant's right to confrontation when the testimony was admit-

STATE v. FINNEY

[157 N.C. App. 267 (2003)]

ted as an exception to the hearsay rule; and (8) the unavailability of the victim was not the result of the conduct of the State.

**2. Evidence— victim's prior testimony disallowed—failure to reopen case**

The trial court did not err in a first-degree rape case by refusing to allow defendant to present the prior voir dire testimony of the victim because defendant was presented with the opportunity to reopen his case and call the victim as a witness, but he failed to do so.

**3. Rape— first-degree—instruction—serious physical injury—mental injury**

The trial court did not commit plain error by its jury instruction on first-degree rape, because: (1) the trial court correctly defined serious physical injury; and (2) there is no additional burden on the State to show that a mental injury was more than that normally experienced in every forcible rape in addition to showing that the mental injury extended for some appreciable time.

Appeal by defendant from judgment entered 16 October 2001 by Judge James U. Downs in Henderson County Superior Court. Heard in the Court of Appeals 20 February 2003.

*Roy Cooper, Attorney General, by David N. Kirkman, Assistant Attorney General, for the State.*

*Miles & Montgomery, by Lisa Miles, for defendant-appellant.*

STEELMAN, Judge.

Defendant, Steven Mark Finney, appeals a conviction of first-degree rape. He sets forth three assignments of error. For the reasons discussed herein, we find no error.

The State's evidence tends to show the following: After midnight on 23 November 2000, Virginia Finney (Finney), wife of defendant, was preparing Thanksgiving dinner when defendant came home, demanding that she make him dinner. Defendant was drunk. Finney told defendant he could not eat what she had prepared for Thanksgiving. Defendant threw the food on the floor and slammed Finney's head against a cabinet. He verbally threatened Finney, tried to choke her, and eventually forced her to engage in sexual intercourse.

STATE v. FINNEY

[157 N.C. App. 267 (2003)]

Afterwards, when defendant fell asleep, Finney left the house and ran to her mother's home between two and three o'clock in the morning.

Finney's mother, Etta Lewis (Lewis), called for emergency help. She noted that Finney's face, lips and neck were swollen, her eyes "blurred out," and her arms, chest, vagina and rectum were bruised.

At the hospital, Finney was examined by Dr. Ivy Shuman and Jamie Maybin Gibbs, a nurse. Finney was upset and did not want to speak with a male when she checked in the emergency room. She was able to recount her ordeal with a female nurse. Dr. Shuman noted numerous bruising about Finney's face and neck. Finney was prescribed antibiotics and a rape kit was completed.

Suzi Barker, a special agent with the crime lab of the North Carolina State Bureau of Investigation, found evidence of semen in Finney's rape kit. Dr. David Freeman, also a special agent, analyzed blood stains and vaginal swabs. DNA from Finney and defendant were present in the swabs.

Detective Walter C. Harper of the Henderson County Sheriff's Department investigated the allegations. He took a statement from Finney on 24 November 2000. She stated that just prior to the incident, she had undergone a hysterectomy which rendered it nearly impossible for her to have comfortable sexual intercourse. Detective Harper searched the Finney home on 27 November 2000, where he found stained sheets and bloodstains in a bathroom. He noted that defendant is approximately six feet tall, weighing 210 pounds. Finney is approximately five feet, two inches tall.

Defendant did not present any evidence at trial. He was found guilty of first-degree rape by a jury. Defendant was sentenced to 307 to 378 months in prison. He appeals.

I.

[1] In his first assignment of error, defendant argues the trial court erred by allowing Detective Harper to read Finney's statement to the jury. Defendant contends that the statement was inadmissible hearsay. We disagree.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c)

(2003). The prohibition against hearsay bars the admission of out-of-court statements offered to prove the truth of the matter asserted. *Id.* Numerous exceptions to the hearsay rule exist, however, so that out-of-court statements may be admissible under some circumstances. *See* N.C. Gen. Stat. § 8C-1, Rule 804 (2003).

Under Rule 804(a)(2), a hearsay statement is admissible if the declarant is unavailable and the statement falls into one of the exceptions. " 'Unavailability as a witness' includes situations in which the declarant . . . [p]ersists in refusing to testify concerning the subject matter of [her] statement despite an order of the court to do so[.]" N.C. Gen. Stat. § 8C-1, Rule 804(a)(2) (2001).

The State sought to admit a statement under Rule 804(b)(5). Before admitting evidence under Rule 804(b)(5), the trial judge must engage in a six-part inquiry: (1) whether the proponent of the hearsay provided proper notice to the adverse party of his intent to offer it and of its particulars; (2) that the statement is not covered by any of the exceptions listed in Rule 804(b)(1)-(4); (3) that the statement possesses equivalent circumstantial guarantees of trustworthiness; (4) that the proffered statement is offered as evidence of a material fact; (5) whether the hearsay is more probative on the point for which it is offered than any other evidence which the proponent can produce through reasonable means; and (6) whether the general purposes of the rules and the interests of justice will best be served by admission of the statement into evidence. *See State v. Williams*, 355 N.C. 501, 565 S.E.2d 609 (2002), *cert. denied*, 537 U.S. 1125, 154 L. Ed. 2d 808 (2003); *State v. Triplett*, 316 N.C. 1, 340 S.E.2d 736 (1986). We note that detailed findings of fact are not required. *Triplett*, 316 N.C. at 9, 340 S.E.2d at 741. In the instant case, the trial court found that all of these factors were present.

First, although Finney appeared at trial pursuant to a subpoena, she refused to answer any questions before the jury. The trial judge excused the jury and proceeded with the witness on *voir dire*. During this examination, Finney stated, "I do not wish to testify and I want to leave." She then refused to answer any further questions. The trial court made a finding of fact that sufficient written notice was given to the defense by the State as to Finney's unavailability in light of the fact that the State did not learn that Finney would not testify until the first day of trial. In *State v. Triplett*, 316 N.C. 1, 13, 340 S.E.2d 736, 743 (1986), the trial court found no error when the proponent of the evidence provided notice on the day of trial, in light of the facts. Likewise, here, the defense was present when Finney made her sur-

prising statement that she would not testify. We hold there was no error in the notice requirement under these circumstances.

Later in the trial, the trial court conducted a lengthy *voir dire* hearing to determine whether Finney's statement to Detective Harper was admissible. Prior to ruling on defendant's objection to the admissibility of the statement, the trial judge noticed that Finney was present in the courtroom. The prosecutor called Finney to come forward. The trial judge ordered Finney to come forward and take the stand three times. Finney refused, stating, "I will not go to the stand without my lawyer." Finney left the courtroom. The trial court then found that Finney was unavailable. *See State v. Linton*, 145 N.C. App. 639, 551 S.E.2d 572 (2001), *rev. denied*, 355 N.C. 498, 564 S.E.2d 229 (2002).

Second, the statement at issue is not covered by any of the hearsay exceptions listed in Rule 804(b)(1)-(4), which include former testimony, statements under a belief of impending death, statements against interest, and statements of personal or family history. *See* N.C. Gen. Stat. § 8C-1, Rule 804(b) (2001).

Third, the statement possessed equivalent circumstantial guarantees of trustworthiness. In determining whether a hearsay statement has sufficient indicia of trustworthiness, a trial court should consider: (1) the declarant's personal knowledge of the underlying incident; (2) the declarant's motivation to speak the truth; (3) whether the declarant recanted; and (4) the reason for the declarant's unavailability. *State v. Bullock*, 95 N.C. App. 524, 383 S.E.2d 431 (1989) (citing *State v. Nichols*, 321 N.C. 616, 624, 365 S.E.2d 561, 566 (1988)).

Finney clearly had personal knowledge of the sexual assault and had motivation to speak the truth. She never recanted. In fact, her statement to Officer Harper was substantially similar to her statements made to Lewis, Dr. Shuman and Nurse Gibbs about the incident. There were no contradictions within the version of the incident as told by Finney to Detective Harper. All of Finney's accounts of the incident were consistent. Further, Finney's reason for being unavailable stemmed in part from her negative feelings for the assistant district attorney. Her unavailability had nothing to do with the trustworthiness of her statement to Detective Harper. In addition, the other witnesses' observation of Finney's physical injuries corroborated the statement.

Fourth, the statement was clearly offered as evidence of a material fact; *i.e.*, the circumstances surrounding the sexual assault. In *North Carolina v. Fowler*, 353 N.C. 599, 548 S.E.2d 684 (2001), *cert. denied*, 535 U.S. 939, 152 L. Ed. 2d 230 (2002), our Supreme Court upheld a trial court's finding that statements sought to be admitted were material because the statements described the assailants and the details of the crime. Likewise, in the present case, Finney's statement to Detective Harper described the assailant and the details of the offense.

Fifth, the trial judge found that the hearsay was more probative than any other evidence produced by the State. A statement is more probative than any other evidence if: (1) the State's efforts to procure more probative evidence were diligent; and (2) the State could not reasonably procure other evidence. *Id.* at 613, 548 S.E.2d at 695. Here, the trial court's findings support a conclusion that the State acted diligently in attempting to get Finney to take the stand. Their efforts included a subpoena for Finney to appear and testify. Although her live testimony would have been more probative than her prior statement, it was clear that she would not testify at this trial.

Sixth, the general purposes of the Rules of Evidence and the interests of justice were best served by allowing the statement into evidence. The record supports the trial judge's findings. We therefore hold that the trial court made the appropriate findings and did not err in allowing Finney's statement into evidence. *See generally, State v. Fowler*, 353 N.C. 599, 548 S.E.2d 684 (2001).

Defendant further argues that the admission of Finney's statement to Detective Harper violated his confrontation rights. Nonetheless, "if testimony is admitted under the hearsay rule, or as an exception to it, there is no right of confrontation." *State v. Willis*, 332 N.C. 151, 167, 420 S.E.2d 158, 165 (1992) (citing *State v. Hardy*, 293 N.C. 105, 235 S.E.2d 828 (1977)). *See also Bruton v. United States*, 391 U.S. 123, 20 L. Ed. 2d 476 (1968), *cert. denied*, 397 U.S. 1014, 25 L. Ed. 2d 428 (1970). Here, testimony was admitted as an exception to the hearsay rule and, consequently, a right of confrontation does not apply.

In addition, defendant argues that because Finney was unavailable due to the actions of the State, her statement to Detective Harper should have been excluded, citing Rule 804 and *State v.*

*Small*, 20 N.C. App. 423, 201 S.E.2d 584 (1974). Rule 804 provides that "[a] declarant is not unavailable as a witness if his exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of his statement for the purpose of preventing the witness from attending or testifying." N.C. Gen. Stat. § 8C-1, Rule 804 (2001). However, there is no evidence that the prosecution in any way acted for the purpose of preventing Finney from testifying. In fact, the conduct of the State reveals the exact opposite. Finney was subpoenaed to testify by the State and was called to the witness stand before the jury. At a later stage in the trial, the State attempted the call her again to the stand to testify.

The trial judge found that there were a number of possible reasons why Finney refused to testify, including that she was angry with the assistant district attorney for subpoenaing her to testify in the case. This does not support defendant's contention that the State acted for purposes of preventing Finney to testify, so that they could introduce her statement to Detective Harper to the jury.

In *State v. Small, supra,* the defendant fled the courtroom in the middle of the trial. His attorney then sought to introduce defendant's *voir dire* testimony to the jury. The trial court denied this request because the defendant was unavailable due to his own actions. In the present case, the unavailability of Finney was not the result of the conduct of the State. This assignment of error is without merit.

II.

[2] In his second assignment of error, defendant argues the trial court erred in refusing to allow defendant to present the prior testimony of the victim. We disagree.

After the State rested its case, defendant was given the opportunity to present evidence, but declined. During the course of the charge conference, the defense requested that the court have Finney's *voir dire* testimony read to the jury. The trial judge noted that Finney had again returned to the courtroom and told defense counsel that defendant would be allowed to reopen his case and call Finney to testify before the jury. Defendant refused. He cannot now assert prejudice when he was afforded the opportunity to reopen his case and call Finney as a witness. *See generally,* N.C. Gen. Stat. § 15A-1443(a) (2001). This assignment of error is without merit.

III.

**[3]** By his third assignment of error, defendant argues the trial court committed plain error in its jury instruction on first-degree rape. We disagree.

Plain error is an error " 'so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached.' " *State v. Parker*, 350 N.C. 411, 427, 516 S.E.2d 106, 118 (1999), *cert. denied*, 528 U.S. 1084, 145 L. Ed. 2d 681 (2000) (quoting *State v. Bagley*, 321 N.C. 201, 213, 362 S.E.2d 244, 251 (1987), *cert. denied*, 485 U.S. 1036, 99 L. Ed. 2d 912 (1988)).

We note that the defense did not object to the trial court's proposed jury instruction at the charge conference or following the charge being given to the jury. The trial judge instructed the jury upon first-degree rape, and a lesser-included offense of second-degree rape, in accordance with the North Carolina Pattern Jury Instructions. As to the fourth element of first-degree rape, the court charged on serious physical injury, stating that this could include a serious mental injury, and that for the jury to find a serious mental injury, it had to extend for some appreciable time beyond the incident surrounding the crime itself.

After deliberating for a few minutes, the jury asked for an explanation of the difference between first-degree and second-degree rape. The trial judge re-instructed the jury on all elements of first-degree rape and advised them that the difference between first-degree and second-degree rape was that the State was not required to prove a serious personal injury in second-degree rape.

Defendant contends the trial court erroneously eliminated the instruction on serious physical injury. However, the transcript shows that in re-charging the jury, the trial judge correctly defined serious physical injury.

Defendant further contends that the trial court failed to instruct the jury that in order to support a conviction for first-degree rape, the alleged mental injury must be more than or different from the injury usually associated with a forcible rape, citing *State v. Baker*, 336 N.C. 58, 441 S.E.2d 551 (1994).

The trial judge's instruction when re-charging the jury on the definition of "serious physical injury" was as follows:

Now serious personal injury is such injury as causes such physi-cal—serious physical injury—such physical injury as causes great pain and suffering. Serious mental injury is that type of injury to the mind or to the nervous system that not only results or occurs as a result of the trauma of the event being complained of but that type of mental—of injury to the mind or nervous sys-tem that extends and lasts for an appreciable period of time beyond the incident surrounding the crime involved—alleged crime involved.

Under *Baker*, "the mental injury [must] extend for some appreciable time beyond the incidents surrounding the rape and [it must be] a mental injury beyond that normally experienced in every forcible rape." *Id.* at 64. Mental injuries normally experienced in rape case are those " 'so closely connected to [an] occurrence or event in both time and substance as to be a part of the happening.' " *Id.* at 63.

In *State v. Easterling*, 119 N.C. App. 22, 457 S.E.2d 913, *rev. denied*, 341 N.C. 422, 461 S.E.2d 762 (1995), this Court held that there was no additional burden on the State to show a mental injury must be more than that normally experienced in every forcible rape in addition to showing the mental injury extended for some appreciable time. "Rather, . . . if a mental injury extends for some appreciable time, it is therefore a mental injury beyond that normally experienced in every forcible rape." *Id.* at 40, 457 S.E.2d at 924. We therefore find no plain error. This assignment of error is without merit.

NO ERROR.

Judges McGEE and HUDSON concur.